B&D CONTRACTORS, INC.,
Plaintiff-Appellant,

v.

ARWIN WINDOW SYSTEMS, INC. and
Graham Architectural Products Corp.,
Defendants,

TRANSCONTINENTAL INSURANCE COMPANY,
Defendant-Respondent.

Court of Appeals

*No. 2005AP2157. Submitted on briefs April 6, 2006.
—Decided May 23, 2006.*

2006 WI App 123

(Also reported in 718 N.W.2d 256.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kimberly A. Hurtado* and *Francisco J. Vasquez* of *Hurtado, S.C.*, of Wauwatosa.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *David J. Farley* and *Patrick D. McNally* of *Borgelt, Powell, Peterson & Frauen, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J.   B & D Contractors, Inc., appeals the trial court's grant of summary judgment dismissing its claim against Transcontinental Insurance Company. Transcontinental Insurance provided Commercial-General-Liability coverage to Graham Architectural Products Corp. B & D sued Graham and Arwin Window Systems, Inc., in connection with a building-renovation project for which B & D was a subcontractor. Arwin Window Systems designed the replacement windows. Graham made the window frames, and had Commercial-General-Liability coverage from Transcontinental. Arwin assembled the frames with glass supplied by some-

one else. B & D's third amended complaint alleged that Arwin and Graham gave B & D defective windows. B & D's third amended complaint also asserted that the Transcontinental policy covered Graham in connection with the windows. Transcontinental Insurance denied this, and it and B & D cross moved for summary judgment on the coverage issue. The trial court granted Transcontinental's motion and dismissed it from the case. We affirm.

¶ 2.  Our review of a trial court's grant of summary judgment is *de novo*. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). Whether the Commercial-General-Liability policy issued by Transcontinental Insurance to Graham Architectural Products gives Graham coverage is also a question of law that we review *de novo*. *See Mullen v. Walczak*, 2003 WI 75, ¶ 12, 262 Wis. 2d 708, 713, 664 N.W.2d 76, 79.

¶ 3.  The facts underlying this appeal are not disputed. The windows failed because the frames were not strong enough to hold the heavy glass. This caused the frames to bend and some of them to break their glass. As a result, the Arwin/Graham windows, including those that had not yet failed, were removed, and new ones were installed.

¶ 4.  Neither B & D nor Graham disputes that there would be coverage under Graham's Commercial-General-Liability policy unless an exclusion removed coverage. As material to this appeal, Transcontinental's policy provides:

This insurance does not apply to:

. . . .

381

**k.** "Property damage" to "your product" arising out of it, or any part of it except when caused by or resulting from:

**(1)** Fire;

**(2)** Smoke;

**(3)** Collapse; or

**(4)** Explosion.[1]

. . . .

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.[2]

(Footnotes added.) The trial court held that the Graham-fabricated window frames were "recalled," as

---

[1] The scope of Exclusion **k.**, as quoted in the main body of this opinion, was amended by an endorsement to read as we have quoted it.

[2] The policy recites:

> **20.** "Your product" means:
>
> **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>
> > **(1)** You;

that term is used in Exclusion **n.**, and, accordingly, there was no coverage. Although the parties debate whether a "recall" can encompass removal and replacement of alleged defective components under the circumstances here, *see, e.g., Paper Mach. Corp. v. Nelson*

**(2)** Others trading under your name; or

**(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**21.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

383

*Foundry Co.*, 108 Wis. 2d 614, 620–622, 323 N.W.2d 160, 163–164 (Ct. App. 1982) (withdrawal of product must be from "market" in anticipation that the product will fail, and not merely the replacement of the product after it has failed), we conclude on our *de novo* review that coverage under Graham's Commercial-General-Liability policy is removed by Exclusion **k.** Thus, we do not discuss Exclusion **n.** *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).[3]

¶ 5.   The risk insured by a Commercial-General-Liability policy " 'is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to prop-

---

[3] B & D Contractors contends that Transcontinental Insurance waived reliance on Exclusion **k.,** asserting that Transcontinental Insurance did not argue the exclusion to the trial court. We disagree.

First, although the trial court did not base its decision granting summary judgment to Transcontinental Insurance on Exclusion **k.** (and, in light of its decision that Exclusion **n.** applied, did not have to, *see Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground")), Transcontinental did argue that Exclusion **k.** also applied, and the trial court referred to that argument in its oral decision. Moreover, as we have already seen, our review of a trial court's grant or denial of a motion for summary judgment is *de novo,* and, further, we may affirm the trial court on any ground, whether argued or not. *State v. Truax*, 151 Wis. 2d 354, 359, 444 N.W.2d 432, 435 (Ct. App. 1989). Additionally, contrary to B & D's contention, a party that prevails in the trial court need not file a cross-appeal to preserve for review an alternative ground to affirm. *See State v. Alles*, 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982).

erty other than to the product or completed work itself, and for which the insured may be found liable,' " and not " 'to make good on products or work which is defective.' " *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 264–265, 371 N.W.2d 392, 394 (Ct. App. 1985) (quoted source omitted). Thus, costs flowing from, or caused by, the repair or replacement of an insured's defective product are not covered by the Commercial-General-Liability policy. *Vogel v. Russo*, 2000 WI 85, ¶¶ 17–28, 236 Wis. 2d 504, 512–518, 613 N.W.2d 177, 182–185, *overruled in part on other grounds by Insurance Co. of N. Am. v. Cease Elec., Inc.*, 2004 WI 139, ¶ 25 n.6, 276 Wis. 2d 361, 372 n.6, 688 N.W.2d 462, 468 n.6; *Jacob v. Russo Builders*, 224 Wis. 2d 436, 447–450, 592 N.W.2d 271, 275–277 (Ct. App. 1999); *St. John's Home of Milwaukee v. Continental Cas. Co.*, 147 Wis. 2d 764, 788–789, 434 N.W.2d 112, 122 (Ct. App. 1988). B & D Contractors does not argue otherwise. Rather, it contends that because the window frames' deflection either broke the window glass or threatened to do so, the frames "collapsed" as that term is used in the exception to Exclusion **k.**, and thus the Exclusion does not apply. We disagree.

¶ 6.   "Insurance policies, like other contracts, are construed to ascertain and effectuate the parties' intent. Thus, a clear contractual provision must be construed as it stands. Ambiguities, however, are construed against the party who drafted the contract." *United States Fire Ins. Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 502–503, 476 N.W.2d 280, 282 (Ct. App. 1991) (internal citations omitted). As we have seen, Exclusion **k.** excludes from coverage " 'Property damage' to 'your product' arising out of it, or any part of it except when caused by or resulting from . . . [c]ollapse." Thus, one of

385

two things must happen before a "collapse" removes Exclusion **k.** from the policy: (1) the "[p]roperty damage" to the "your product" for which an insurance-recovery is sought must be "caused by" the "collapse"; or (2) the "[p]roperty damage" to the "your product" for which an insurance-recovery is sought must have "result[ed] from" the "collapse."

¶ 7. In connection with number (1), damage to the Arwin/Graham windows was not caused by a collapse; rather, the "collapse" (assuming, without deciding, that frame-deflection is a "collapse") was triggered by the frames' alleged defects. Similarly, in connection with number (2), the damage to the Arwin/Graham windows did not "result[] from" the "collapse"; rather, the frames' deflection resulted *in,* and not *from* collapse-damage (again, assuming, without deciding, that the frames' deflection is a "collapse") to the Arwin/Graham windows. Stated another way in connection with both (1) and (2), taking as true B & D's allegations about the defects in the Arwin/Graham windows, the frames were defective for their intended use *before* they were installed; the defects were neither "caused by" nor "result[ed] from" any "collapse." Accordingly, Exclusion **k.** applies, and there is no coverage under Transcontinental's Commercial-General-Liability policy issued to Graham. We affirm.

*By the Court.*—Order affirmed.